The next and last argued case on our calendar today is Wells Fargo Bank v. Holdco Asset Management. Thank you. Thanks. Good afternoon, Jeffrey Sternklar for the appellant Holdco Entities. Your Honor, there are two points I want to emphasize today as to why we think the court below committed reversible error. First, we believe the court committed reversible error in how it constructed the unambiguous invitation to bid, and in so doing, effectively modified the holding of the New York State Court in Drew v. John Deere by requiring what is essentially magic words and finding that the absence of those magic words in this document is what caused this document not to manifest the intent that the auction occur. You prevailed below, didn't you? I beg your pardon? Did you prevail below? No, we lost below. We're the appellant. So, you are not Jeffrey Sternklar? I am Jeffrey Sternklar. You're representing Holdco? Yes. Sorry, I have it now. I apologize for this confusion. No, we didn't get a hearing. The court decided it on the papers, but we lost below. Your Honor, the second error the court made is it failed to consider properly custom and usage in the industry, which, if properly applied, would have shown that the actual words used in the invitation to bid manifested the intent that the auction occur with reverse. Which words? Well, Your Honor, I think there are words throughout. If you look at Section 3A, it says that the sale will be awarded to the highest bidder. 3C2 says the winning bidder shall be the highest bidder. There's nothing in there that says it shall be unless we reserved or withdrew or did any of the other things that one does when an auction is— But your court doesn't require the offeror to say that. No, understood. But what happened here is the words they did use manifested the intent that it be without reserve. But there's also other language that casts doubt on that, the language about not being obliged to make any sale, the confusing use of sale and sales for different purposes. I mean, I would think we start here with the New York law presumption of a reserve. And then to the extent that the language is ambiguous, it would prevent you from thinking the presumption of a reserve is not present here. So I'm not sure I see how we start with the language. We start with the reserve presumption. Now we look at the language, and I don't think the language is clear. What am I missing? I don't think you're missing much, if anything. I think you're right. We start with the presumption that unless the intent is manifested, the auction will be presumed to occur with reserve. Our position is— I'm going to point to language that suggests that it's not reserved, but there's also language that suggests that it is. And so to that extent, I don't think you could defeat the presumption unless I'm missing something. Well, I would take issue with the Court's analysis below that there's language that suggests it is reserved. I think the Court erred in how it constructed that language. The two points it raised were the two you mentioned. It looked at the word defined term sales, which unambiguously referred to an actual auction, not the sale of an individual piece of collateral or piece of the portfolio. There's the use of the word in both senses throughout the documents. That's the problem for you. It's not used consistently. Well, I submit it's clumsy, but it is used consistently to mean auction. I'm not holding this up as a model of drafting, but if one were to look at the word sale and every time the word capital S, sale, appears, one were to substitute the phrase auction, it would work. There's no provision here where it doesn't. And the two that the Court below looked at was really the last two sentences of Section 3A. Now, it's worth noting that what those two sentences say is that the trustee reserved the right to reject a bid, which it deems to have been made by a bidder unable to satisfy the requirements in connection with the sales, the auctions, or to whom in the trustee's judgment a sale, capital S, may not be made. And the Court said even though it's capitalized, that didn't refer to an auction. All right? Our position is if you put auction in there, it works. The auction could not be made, could not occur to someone to whom the trustee concluded they could not lawfully make that auction and they could not accept the bid. I would also submit the second sentence where the Court says the trustee shall not be able to make any capitalized term sale and reserves the right to sell all or part of the collateral at a subsequent public or private sale, if anything, strengthens our argument, not weakens it. How does it do that? Well, because first of all, if it says the right to sell all or part of the collateral at a subsequent private sale, if that word sale only meant any old sale of an individual's security, they would never have had to modify it with all or any part of the collateral. It would have been redundant. By definition, you're talking about a sale of collateral. It seems to me the public or private sale, if you want sale to mean auction, makes no sense to me who grew up in the land of farm sales and everything else and we have auctions. Well, again. Sale is an element of an auction, not the auction itself. But not how it's defined in the very first sentence of the imitation of bid. That's the problem. They use that as a defined term, not as a generic word. All right? It has a specialized meaning in this document. The reference to public or private sale, Your Honor, we think actually strengthens our argument because, again, if it was just a sale of a security, they wouldn't have had to modify that term with the phrase public or private. Those are the only ways to, small s, sell a security. So the fact that they felt the need to modify that word with that phrase indicates that word had a meaning, that they were trying to change with that phrase. We're arguing here about how many angels can dance on the head of a pin, it seems to me, and we go right back to the point that Judge Radji was making as I inferred it from her question. Well, if you agree with us that sale means auction, then we've defeated the presumption. If you, that's really what this is. And if we think it's ambiguous, then you lose. No, I think if it's, well, if it's ambiguous, I suppose we have to potentially remand to find out what the ambiguity is because this was postured as too unambiguous. We're at the presumption. If it's ambiguous, we're at the presumption. Tell us why that is not true. Well, ambiguity doesn't mean it doesn't manifest the intent. Ambiguity means we're not sure what it means. We're not sure what intent is manifested. I don't think ambiguity means the presumption applies. The presumption is to say if we can't, if it's unclear what this means, it means with reserve. It means unless it manifests that intent, and if it's ambiguous as to whether it manifests that intent, what we have is not something the presumption applies to. We still don't know if, in fact, it manifests the presumption necessary to overcome that presumption. All right. So, Your Honor, if you look at, Drew also does not say what is sufficient. Drew simply said, alone, of itself, I think is the word that's used in the opinion, the language that says the asset will sell to the highest bidder, that alone was not sufficient to rebut the presumption. But that's not what we have here. We have an invitation to bid that says that. It also says it will sell at a time certain. It also says it will sell in a closed auction. Golfinopolis and the other opinions we cited, which don't contradict Drew, but simply fill in the gap of what will apply, those say that in those conditions it's generally enough. There's a paucity of opinions, as the district court noted. If you look at them collectively, what you find is that's how the courts look at it. And we think we've satisfied it here. The custom and usage, Your Honor, again, if it's ambiguous, we think you can look even more at custom and usage than was done here. The custom and usage is clear. Wells used two different forms. That difference meant something. But the court below's decision was because the security sold almost all the time, regardless which form Wells used, it doesn't mean anything is wrong. It must mean something. And what we say it means is when you use a form like this form, what it means is in this industry, because bidders have an illiquid market, they have to spend a lot of time and money trying to do diligence. You signal them when you use this form, you are going to sell. It is without reserve. If that weren't the case, why in 19 of the 38 auctions that Wells has conducted in this field did they include language with reserve? Your Honor? Your time has expired. You reserved one minute for rebuttal. Yes. Thank you. Do you want to finish the sentence? I think I interrupted you. No, that's okay. I'll wait to rebuttal. Thank you. Counsel? Just as I interrupted Mr. Sternclaw, he was saying why did Wells Fargo put with reserve in other auctions? And what did you respond to that? My response to that, Your Honor, and good afternoon, is that Wells Fargo used different forms at different times written by different individuals, and that none of that changes the fact that we start with the presumption that an auction is with reserve unless the seller expressly says otherwise at the outset. That's the presumption under New York law? It's the presumption in New York law, and it's the presumption that governs, that starts with the basic contract principles. The basic idea that we don't force a property owner to sell you his or her property unless the owner expressly tells you in advance that they're going to sell their property no matter what. No matter the level of bidding, no matter their own view of the property's value. And that's the basic contract principles that we have in the treatises and the horn books. And those are the sources that New York law, that the Drew court back in 1963 relied on. The position, even if you don't say with reserve. Correct. The position is it is with reserve. Yes. Yes. There's no requirement that the notice, the invitation to bid, expressly state that it is with reserve. That is absolutely the core principle of the law. And, in fact, it's then the other way, that the notice for it to be without reserve, for the seller to be forced to actually part with the item no matter the level of bidding once everything is received, the seller has to expressly state that ahead of time. And when one looks at Drew and looks at the other sources, that's the phrasing, expressly announce, explicit terms. And that's precisely what the Drew court addressed. The question in Drew is, frankly, the same question that we have here. What if the owner announces that they're going to sell to the highest bidder? Is that the express statement, the expressly announcing, does that constitute making the auction without reserve? Did it transform it from with reserve to without reserve? And the answer is no, that that language, we will sell to the highest bidder, doesn't cut it. And this is what the appellate division said back in 1963, citing the same treatises that both parties are looking to. An announcement that a person will sell his property at public auction to the highest bidder is a mere declaration of intention to hold an auction at which bids will be received. Opposing counsel said the word shall change the presumption in this offer. You know, that is a new point that opposing counsel is making in looking at other language in the invitation to bid. And I think it's helpful if we're going to talk about the language to look at the entirety of it. It's page 215 of the appendix. And at 3C, it's the winning bid shall be determined as follows. And then little i, Romanet i, goes through a number of procedures. And then Romanet 2 says, otherwise, the winning bid for each item of collateral shall be the highest qualified bid for each such item of collateral. That's the language. The shall doesn't make it with reserve. The shall doesn't make it with reserve. There's nothing there that says that the . . . Without reserve. I apologize. Thank you for not catching that. That's right. It doesn't make it without reserve. There's nothing there where it's using the shall in the sense of must or definitely. And I think that's why counsel looks to that language because they understandably are trying to latch on to where in the law can we find some support. And so the idea is let's look at the Golfinopolis case from New Jersey in 1987. And the Golfinopolis case is a case that has some definite language. And, in fact, it's that literally, the word definitely is used. The contract will definitely be awarded on Friday, May 30th of 86 to the highest responsible bidder. And that language, the New Jersey court latched on to and said the definite award language raises the memorandum from a solicitation for offers from prospective purchasers to a firm offer to sell upon particular items. But we're backed by Drew regardless. And Drew doesn't have that language. I mean, the Drew language is the same language we have here, which is will sell. And the question before the court below and the court here is, well, when you have language that we will sell to the highest bidder, is that sufficient to be without reserve? The answer is no. And then I understand the argument on appeal as well. Drew doesn't go, doesn't answer all the questions. Because Drew doesn't tell you that perhaps there's some additional language that could work, and we should have the opportunity, we being HoldCode, to develop that. But that's not what Drew leads us to in this case. Let me contrast Drew. In Drew, it's a short opinion, but apparently based on the opinion, there was an advertisement. And in an advertisement for an auction for, I believe, farm equipment, and that advertisement said that it will be sold to the highest bidder. And that was it. That was the only evidence that was put before the court. And so the appellate division recognized that perhaps there's something else. Perhaps there's another document. Perhaps there's a statement by the auctioneer at the date of the auction that could evince the necessary express announcement of without reserve. And so on that basis, they said, you know, we're going to deny the plaintiff's motion for summary judgment, but we're going to let you see if there's anything else. Well, that's not our situation here. Our situation here is that we have a complete record. HoldCode doesn't suggest that there's any communication about the January 2016 auction for the court to consider. HoldCode itself cross-moved for summary judgment on the same facts. So we have a full record of communications about the January auction. It's already before this court. It was before the district court. And so, and what we have in front of us, and the complete record, is no more than what the Drew court has already said is insufficient. So there's no need to go any further. We have a presumption under New York law that an auction is with reserve unless it's expressly announced otherwise. And where we look here at the invitation to bid, we look here at any of the materials related to the January auction that are put in the record, which both parties cross-moved on summary judgment. And what we have is the same as the fourth department ruled on in Drew, and there's no need to go any further. Without that express announcement, we have an auction with reserve. The trustee reserved its right to reject all the bids once they were in, to the extent, period, in this case because they didn't meet the floor that was established beforehand, and then to proceed subsequently with perhaps another sale, however which they chose to do. And that's the situation that we have here. Unless the court has further questions, we're happy to rest on the brief on the remainder of the points. Thank you, counsel. Mr. Turkle, you reserve one minute for rebuttal. Drew does not answer this question here. Drew said one of the multiple things in this invitation to bid, standing alone, is insufficient. A, we have more than that one thing in this invitation to bid. B, Drew does not say then what is sufficient. So Drew has a limited impact on this case, which is it sets sort of the starting point, not the ending point. In fact, Drew didn't decide much of anything. It remanded the case back down to the lower court, refused to give summary judgment because the court said, well, this one sentence in itself isn't sufficient to establish the auctions without reserve, but we're going to remand because there may be other things. So it's anomalous to say Drew decides- Let me ask you this one question. You rely on the definition, I think you argued earlier to us, of the word sales, plural, in the first page of the notice and offer. And 3C, which the court relied on, or sorry, 3A, I mean, which the court relied on, is sale in the singular. Is there a difference? Well, that was the whole gravamen of the case below. We say there isn't. The district court said we should have looked to an indenture that was defined sale differently, that was in an office in Connecticut, that we should have driven up to and read it and realized that the singular is different from the plural and figured it out. The singular is different from the plural. You'll give me that, right? Well, I'll give you in terms of numerosity it is, but beyond that, no. I'm not sure that's obvious. In a single sentence, the court uses, and this is 3A, that the trustee shall not be obligated to make any sale and reserves the right to sell all or part of the collateral at a subsequent public or private sale. I understand how the second use of sale could be an auction, but the first use of sale, make any sale, seems to fit right in with the indenture statement that it's any part of the property. No, but they use a different defined term for part of the property. They call it portfolio and collateral defined terms. Sale is a defined term in the indenture. Sales, yes. No. No, sale, yes, yes. I'm saying that I understand how the second use, public or private sale, could be used to mean auction, but the first one seems to have a different meaning. It seems to mean the sale of a particular item. I don't think that, well, I don't think that is, in fairness, the best reading of that word. It says you don't, it's in the context of talking about reserving bids at sales, so they're saying at a particular auction, they don't have to go forward with it under those conditions. I don't think in context that that. They don't have to sell any part of the collateral. That sounds exactly like a reserve. At an auction. At an auction. But they only can do that, what it allows them to do, it's a right. The very fact that we have to get into all of this convoluted discussion of the meeting seems to undercut your ability to argue that there is the clear disavowal of a reserve, which is what New York law requires. It's very hard for you to say that this kind of language clearly disavows a reserve. I'm not saying that. I'm responding to what the district court did below and finding exactly the opposite. We think if you take the holistic view of this whole document, that is what it exposes. But that one. Absent a clear disavowal, the presumption operates. And I think there was a clear disavowal. When you say the things they said, when you have a sale at a date certain in a closed auction, where you have all these provisions that are mandatory without any exception as to how the collateral will be traded and the winning bid will be determined, yes, I think that manifests the intention. Your Honor, this decision, if it's allowed to stand, will have a chilling effect on people in this space where you don't have a market, where the securities and the things that are sold are opaque and require a substantial amount of time and effort to diligence. And what happened here is because they thought, not just my client, but the brokers too, as you can see from the record, thought that this was without reserve, they spent that time and effort. But if now we're going to tell people that we've got to get into, as you noted, this stuff, you know, it's going to change the focus. Well, given the amount of money that people have probably spent with you all visiting the district court and us here, it may also improve the drafting. Well, one would hope it would improve the drafting, but . . . Right, and then that should obviate the problem that you're identifying for. Well, a different form would have a different result. But this form, you know, if this is allowed to stand and they don't change the drafting based on this decision, it won't change the result. It won't obviate the problem. Thank you. Thank you, Your Honor. Thank you both for a reserved decision. The last case on our calendar is on submission, so I will ask the clerk to adjourn court. Court is adjourned.